**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**(CLARKSBURG DIVISION)**

WILLIAM L. CATHER and BRENDA L. CATHER,
husband and wife, CHARLES H. CATHER and
LINDA F. CATHER, husband and wife,
EVERET P. BICE, JR. and ELIZABETH BICE,
husband and wife, and ROBERT JUNIOR
HEMPHILL, TRUSTEE OF TRUST A CREATED
UNDER THE HEMPHILL FAMILY TRUST
DATED OCTOBER 17, 1995, AS AMENDED,

        **Plaintiffs,**

v.                                                     **Civil Action No. 1:17-cv-208**
                                                       **Honorable Irene M. Keeley**

EQT PRODUCTION COMPANY,
EQT GATHERING, LLC (d/b/a
"EQT MIDSTREAM"), EQT ENERGY, LLC,
EQT MIDSTREAM SERVICES, LLC,
EQT CORPORATION, and
EQUITRANS, L.P.,

        **Defendants.**

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Defendants EQT Production Company ("EQT Production"), EQT Gathering, LLC ("EQT

Gathering"), EQT Energy, LLC ("EQT Energy"), EQT Midstream Services, LLC ("EQT

Midstream"), EQT Corporation, and Equitrans, L.P ("Equitrans") (collectively "non-lessee

entities") submit this Memorandum in support of their Motion for Partial Dismissal of Plaintiffs'

*Complaint*, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] Plaintiffs' Complaint refers to the "Defendant entities" collectively as "EQT" but also refers to "EQT Defendants"
and "EQT Subsidiaries." *See, e.g.,* Doc. No. 1 at ¶¶ 3, 5, 29, 30. Additionally, the Complaint intermittently refers to
particular entities including, but not limited to, "EQT Production" while also referring to "EQT." *See, e.g., Id.* at ¶ 42.
This creates some confusion as to the party against whom the allegations are made. For example, Plaintiffs' Complaint
alleges that "EQT owned the leasehold estate pursuant to the Cather Lease" but also specifies that the "interests of

## I.      INTRODUCTION

In their Complaint, Plaintiffs William L. Cather; Brenda L. Cather; Charles H. Cather; Linda F. Cather; Everet P. Bice, Jr.; Elizabeth Bice; and Robert Junior Hemphill, Trustee of Trust A Created Under the Hemphill Family Trust  assert the following causes of action against each of the Defendants: (1) alter ego; (2) fraud; (3) civil conspiracy to commit fraud; (4)  breach of contract; (5) conversion; (6) unconscionability and breach of the duty of fair dealing; (7) violation of West Virginia Consumer Credit and Protection Act ("WVCCPA"), Article 2; (8) violation of WVCCPA, Article 6; (9) interest on improperly withheld royalty payments; and (10) punitive damages.  *See* Doc. No. 1.

 Plaintiffs seek a variety of damages including, but not limited to, a "decree that EQT Defendants have breached its contract with Plaintiffs, . . . have acted fraudulently, and have violated the covenant of good faith and fair dealing[]", all monies "unlawfully deducted and retained by EQT from Plaintiffs' royalty interest," compensatory damages, punitive damages, an accounting, prejudgment and post-judgment interest, "legal fees and costs incurred," and "other and further relief, both general and special," as the Court deems just and proper." *Id.* at WHEREFORE Paragraph.

Plaintiffs' Complaint as well as the allegations and relief sought therein hinges on their ability to establish that EQT Production and/or the non-lessee entities[2]: (1) had a legal or contractual duty to pay them royalties; (2) breached that legal or contractual duty because they improperly deducted certain expenses from the royalty payments; and (3) that EQT Production has

---

Equitable Gas Company in the Cather Lease passed by assignment to . . . EQT Production Company." Compare Doc. No. 1 at ¶¶ 17 and 36. Plaintiffs also state that "EQT Defendants are the current lessees . . . ." *Id.* at ¶ 100.
[2] Plaintiffs allege that "EQT continues to improperly calculate Plaintiffs' royalties, and improperly and illegally take deductions . . . ." Doc. No. 1 at ¶ 124. As noted above, Plaintiffs define EQT as the "Defendants entities."

improperly sold natural gas underlying the property at issue to EQT Energy in violation of some legal duty or contract. *Id*. at ¶¶ 6, 16-17, 32, 36, 40-42.

## II.    FACTS

At the heart of this matter is a lease agreement for the oil and gas rights for "approximately five hundred and four . . . acres . . . in . . . West Virginia ("Cather Lease")[3] . . . ."  *Id.* at ¶ 6. Plaintiffs are the successors in interest to the original lessors' mineral interests in the Cather Lease. *Id.* at ¶ 16. EQT Production is the successor in interest to Equitable Gas Company's interest in the Cather Lease. *Id.* at ¶ 17.

Plaintiffs allege that "EQT . . . had the duty and responsibility to comply with all lease terms and conditions . . . and to promptly pay to Plaintiffs all rent, royalties and other monies, exclusive of any deductions or costs (excessive or otherwise), due them based upon the actual price received by EQT from an unaffiliated third-party for said products produced and sold from the Plaintiffs' Leasehold." *Id.* at ¶ 36. Moreover, Plaintiffs allege that EQT utilizes the net-back method to calculate Plaintiffs' royalty payments and that "[t]his method of calculating the price 'at the wellhead' . . . is improper, fraudulent, and violative of the Cather Lease and West Virginia law . . . ." *Id.* at ¶ 42.

## III.    LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court will construe factual allegations in the non-moving party's favor and will treat them as true, but the court is not bound by the complaint's legal conclusions. *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009).  While the court must accept all factual allegations as true to determine if the plaintiff is entitled to relief, "[t]hreadbare recitals of the elements of a cause of action supported

---

[3] Occasionally, Plaintiffs refer to an "EQT Lease" in their Complaint. For purposes of this Memorandum, EQT Production and the non-lessee entities assume that in referring to the "EQT Lease" Plaintiffs refer to the Cather Lease.

by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Therefore, the Plaintiffs' Complaint should be dismissed if the Plaintiffs have failed to "nudge [their] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When considering a Rule 12(b)(6) motion to dismiss, the court "may properly take judicial notice of matters of public record."  *See Phillips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## IV. ARGUMENT

### A.  Plaintiffs have failed to allege facts which create a facial plausibility of a basis to impose alter ego liability.

Plaintiffs assert that EQT Energy, EQT Production, and "all other EQT Defendants" are alter egos for EQT Corporation. *See* Doc. No. 1 at IV. "When determining whether to ignore the corporate form, however, it is not easily proved and the burden of proof is on a party soliciting a court to disregard a corporate structure." *Leggett v. EQT Prod. Co*., No. 1:13CV4, 2016 WL 297714, at *6 (N.D.W. Va. Jan. 22, 2016) (internal quotation omitted) (citation omitted). "West Virginia law recognizes that 'separately incorporated business are separate entities and that corporations are separate from their shareholders.'" *Id.* (citation omitted). Additionally, "the corporate form will ***never be disregarded lightly***." *Id.* (citation omitted) (emphasis in original).

The United States District Court for the Northern District of West Virginia, Wheeling Division, has previously determined that EQT Corporation, EQT Energy, EQT Gathering, and EQT Investment Holdings, LLC  are not alter egos of EQT Production and has held that "each have officers and maintain their own business activities . . . [and] [t]he fact that one corporation is

'owned by another' or shares 'common officers,' or even maintain a 'mutuality of interests,' does not automatically warrant a disregard of the corporate structure." *Id.* at *7. Conversely, the court in *The Kay Company, LLC v. EQT Production Company, et al*, Civil Action No. 1:13cv151, pending in the U.S. District Court for the Northern District of West Virginia, recently ruled that three of the Defendants here are alter egos of one another and conditionally certified a class action. This Court should hold, similar to the Court in *Leggett*, that EQT Gathering, EQT Energy, and EQT Production are not alter egos of EQT Corporation.

Further, Plaintiffs' allegations, even if accepted as true at this juncture, do not establish that EQT Midstream or Equitrans, L.P. are alter egos of EQT Corporation.[4] Moreover, the allegations do not establish that EQT Corporation and either EQT Midstream or Equitrans, L.P. have "ignored corporate formalities, commingled funds, or operated as 'dummy' entities." *Leggett,* 2016 WL 297714, at *7.

Additionally, Plaintiffs' allegations do not establish that EQT Corporation, EQT Midstream, or Equitrans do not each have their own offices or maintain their own business activities. *See id.* Moreover, in *Leggett*, the court held that "although . . . [business] activities, communications, and purposes may relate to EQT [Production]," they do not constitute the requisite "fraudulent or improper conduct." *Id*. Additionally, in *Leggett*, the court noted that "[t]he fact that one corporation is 'owned by another' or shares 'common officers,' or even maintain a 'mutuality of interests,' does not automatically warrant a disregard of the corporate structure. *Id.*

The court's analysis in *Leggett* is equally applicable to the relationship between EQT Corporation and EQT Midstream and Equitrans. Here, Plaintiffs' allegations, even if assumed true,

---

[4] In referring to "all other EQT Defendants" as "alter egos for EQT Corporation", EQT Production and the non-lessee entities assume for purposes of this Memorandum that Plaintiffs assert their alter ego allegation against EQT Midstream and Equitrans. as well.

indicate only that EQT Midstream's and Equitrans' activities, communications, and purposes are related to EQT Corporation; that EQT Midstream, Equitrans, and EQT Corporation share common officers and a mutuality of interest; and that EQT Corporation owns Equitrans and EQT Midstream. Doc. No. 1 at ¶ 57-81. Accordingly, Plaintiffs' claim for alter ego should be dismissed.

**B. Plaintiffs' claims for Fraud, Civil Conspiracy to Commit Fraud, and Conversion are Barred by the Gist of the Action Doctrine. Even if Plaintiffs' claims for Fraud and Civil Conspiracy to Commit Fraud were not so barred, they are not pled with the requisite degree of particularity and must be dismissed.**

**1. The Gist of the Action Doctrine bars Plaintiffs' claims for Fraud, Civil Conspiracy to Commit Fraud, and Conversion.**

The Gist of the Action Doctrine applies where *any one* of the following four factors is present: "(1) where *liability arises solely from the contractual relationship* between the parties; (2) where the alleged *duties breached were grounded in the contract* itself; (3) where any *liability stems from the contract*; and (4) when the *tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim*." *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love,* 746 S.E.2d 568, 577 (W. Va. 2013) (emphasis added).

**a. Plaintiffs' claims for Fraud and Civil Conspiracy to Commit Fraud fail to state claims upon which relief may be granted.**

Here, Plaintiffs' allegations satisfy all four factors which would require application of the Gist of the Action Doctrine. Plaintiffs allege that "*EQT has materially misrepresented its obligations and duties to the Plaintiffs under the Cather Lease* and under West Virginia law in that, on a monthly basis, EQT provides a royalty statement which knowingly, intentionally and falsely states that EQT is entitled to withhold monies from Plaintiffs' royalty checks . . . ." *Id.* at ¶ 88 (emphasis added). Additionally, Plaintiffs allege they are "depriv[ed] . . . of their rightful 1/8 royalty payment [pursuant to the Cather Lease] from EQT's actual sale proceeds upon which

Plaintiffs' royalties should be based" as a result of EQT's allegedly "fraudulent transaction." *Id.* at ¶ 84. In so alleging, Plaintiffs establish the applicability of the Gist of the Action Doctrine to their fraud claim as follows: (1) EQT Production and the non-lessee entities' alleged liability arises from a duty imposed solely by the Cather Lease; (2) all of EQT Production and the non-lessee entities' alleged liability stems from the Cather Lease; (3) Plaintiffs' fraud claims duplicate their breach of contract claim; and (4) Plaintiffs cannot successfully establish their fraud and conspiracy claims without first establishing their breach of contract claim.

Because the parties' rights and obligations arise solely from the Cather Lease, Plaintiffs' causes of action for fraud and civil conspiracy are barred by the Gist of the Action Doctrine and must be dismissed.

> **b. Plaintiffs' claim for Conversion fails to state claims upon which relief may be granted and should be dismissed.**

In instances, such as this case, where the success of a plaintiff's conversion claim is dependent upon its breach of contract claim, the Gist of the Action Doctrine applies when any of the four factors is present. *See Gaddy Eng'g Co.,* 746 S.E.2d at 577. Recently, the United States District Court for the Northern District of West Virginia, Wheeling Division, in dismissing a similar conversion claim because it arose from an alleged breach of contract, noted that "[i]n short, to determine whether a tort claim can be sustained separate from the breach of contract claim, the court must examine 'whether the parties' obligations are defined by the terms of the contract.'" *Rodgers v. Southwestern Energy Company*, 2016 WL 3248437, at *3 (N.D.W. Va. June 13, 2016).

Plaintiffs' allegations against the EQT Production and the non-lessee entities arise out of the contractual relationship between EQT Production and the Plaintiffs' pursuant to the Cather Lease and it is inescapable that the this contract defines the obligations of the parties.  There is no

dispute that EQT Production has a property interest in the oil and gas at issue, and that the instant dispute hinges on the royalties paid or not paid by "EQT" to Plaintiffs. Doc. No. 1 at ¶ 102.

Plaintiffs' breach of contract claim is premised on the allegation that the "EQT Defendants" violated the Cather Lease by failing to accurately pay them the royalty interest for production from the property at issue in accordance with the Cather Lease. *Compl.* at ¶ 101. Plaintiffs cannot circumvent reality by artful pleading: if "EQT Defendants" did not violate the Cather Lease at issue, there can be no conversion.  Because a finding of breach of contract is a condition precedent to a finding of conversion in this case, the success of Plaintiffs' tort claim is clearly dependent on the success of its breach of contract claim and barred by the Gist of the Action Doctrine.

Plaintiffs cannot establish that EQT Production and/or the non-lessee entities acted wrongfully as "EQT" paid Plaintiffs their royalty payments pursuant to the Cather Lease. *See* Doc. No. 1 at ¶ 48. Conversion is a tort claim that "is essentially the exercise over the personal property of another by a person who has no legal right to do so." *Rodgers v. Rodgers*, 184 W. Va. 82, 95, 399 S.E.2d 664, 677 (W. Va. 1990). In order to establish a claim for conversion, a plaintiff must establish that a defendant somehow *wrongfully* exerted dominion over its property. *See Pine & Cypress Mfg. Co. v. American Eng'g & Constr. Co.*, 97 W.Va. 471, 125 S.E. 375, 377 (W. Va. 1924).

In the instant case, Plaintiffs allege that "EQT" wrongfully withheld a portion of its royalty payments for certain expenses pursuant to the Cather Lease: a valid contract. Doc. No. 1 at ¶¶ 40, 107. Whether or not "EQT"'s deduction of certain expenses from Plaintiffs' royalty payment was appropriate, a contract lies at the heart of Plaintiffs' allegations. *See* Doc. No. 1 at ¶ 102. Under *West Virginia* law, "[a] valid written instrument which expresses the intent of the parties in plain

and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (W. Va. 1962).

Because EQT Production has paid Plaintiffs royalty payments for production from the property at issue in the Cather Lease, there is no set of facts upon which Plaintiffs can establish their claim for conversion and the same must be dismissed; if the deductions were in breach of the Cather Lease, Plaintiffs' remedy is the contract measure of damages.

> **2. Plaintiffs' fraud and civil conspiracy claims fail to meet the heightened pleading standard required by Federal Rules of Civil Procedure 9(b).**

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard requiring that in all averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b). According to the United States Court of Appeals for the Fourth Circuit, "the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation omitted) (citation omitted). "The heightened pleading requirements for fraud claims prompt a careful inquiry into the plaintiffs' . . . fraud allegations . . . ." *Cooke & Moses, LLC v. QSS-Engineered Sys. Grp.*, LLC, No. CIV A 106-CV-147, 2007 WL 2463288, at *8 (N.D.W. Va. Aug. 28, 2007).

As noted above, Plaintiffs' causes of action for fraud and civil conspiracy appear to be two-pronged: (1) "EQT's fraudulent transaction [and (2) EQT's] misrepresentation of the truthfulness in their royalty statements." *Compl.* at ¶ 85. Plaintiffs allege that the result of the allegedly fraudulent transaction and misrepresentation is a "false and undervalued determination of the overall royalty due to Plaintiffs . . . ." *Id.*

### a. EQT Production and the non-lessee entities' allegedly fraudulent misrepresentation.

Plaintiffs set forth the following in support of their allegation of a fraudulent misrepresentation:

> 83. EQT Defendants . . . intentionally and knowingly concealed, misrepresented, and/or failed to reveal material information to Plaintiffs related to: volumes, amount, sales price, and BTU of product produced from Plaintiffs' said Leasehold, (ii) the value of the oil, gas and related products, and (iii) other information, including amount of and description of operating costs regarding the sale of Plaintiffs' gas and related products . . . .

> 88. EQT has materially misrepresented its obligations and duties to the Plaintiffs under the Cather Lase and under West Virginia law in that, on a monthly basis, EQT provides a royalty statement which knowingly, intentionally and falsely states that EQT is entitled to withhold monies from Plaintiffs' royalty checks, which statement is therefore false and misleading.

> 89. EQT has wrongfully, knowingly, and fraudulently deducted various amounts from Plaintiffs' royalty interest in their leasehold and continue to do so at this time.

*Id.* at ¶¶ 83, 88, 89. The allegations set forth by Plaintiffs in support of their allegation of fraudulent misrepresentation fail to set forth the time and place of the allegedly false representation as required by the Court in *Harrison*. Additionally, Plaintiffs fail to identify with specificity the identity of the "person" making the misrepresentation and the benefit obtained thereby. Instead, Plaintiffs refer generally to "EQT Defendants" or "EQT" and state that the "misrepresentations deprived Plaintiffs of the rents and royalties to which they are entitled," the misrepresentations "produc[ed] a false and undervalued determination of the overall royalty," and that they were "denied rents and royalties under the terms of the EQT Lease as required by law." *Id.* at ¶¶ 83, 85, 87.

**b. EQT Production and the non-lessee entities' allegedly fraudulent transaction.**

In an effort to satisfy the circumstances identified in *Harrison*, Plaintiffs allege that "EQT Production Company produces the natural gas from Plaintiffs' leasehold, and then sells the gas 'at the wellhead' to an EQT affiliated company, EQT Energy, LLC, . . . at a price artificially set in a gas purchase contract between EQT Production Company and EQT Energy, LLC. The agreed upon price within that contract is not the actual selling price used by EQT for the oil, gas, or other hydrocarbons produced from Plaintiffs' leasehold." Doc. No. 1 at ¶ 84. Further, Plaintiffs allege that their "royalty payments are calculated upon the artificial price EQT Energy, LLC, and EQT Production, LLC, have agreed upon. Thereafter, EQT Energy, LLC, sells the oil, gas, or other hydrocarbons at a price significantly higher than the EQT Production/Energy sale price." *Id*. According to Plaintiffs, "[t]he first transaction . . . , upon which royalties are based, allows EQT to engage in a secondary sale whereby EQT obtains a higher profit for itself while depriving Plaintiffs of their rightful 1/8 royalty payment from EQT's actual sale proceeds upon which Plaintiffs' royalties should be based. EQT's royalty statements are based upon the above described fraudulent transaction." *Id*.

The allegations set forth by Plaintiffs in support of their allegation of fraudulent transaction fail to set forth the time and place of the allegedly false transaction with the requisite specificity. Additionally, Plaintiffs fail to identify with specificity the identity of the "person" conducting the fraudulent transaction and states that "EQT devised and operates under the . . . scheme." *Id*. Instead, the Complaint classifies "EQT" as the "Defendant entities" including EQT Production Company; EQT Gathering; EQT Energy; EQT Midstream Services, LLC; EQT Corporation; and Equitrans, L.P. *Id*. at ¶ 3. Additionally, Plaintiffs identify a "higher profit" for EQT and an "undervalued determination of the overall royalty due to Plaintiffs" as the benefit obtained as a

result of the fraudulent transaction and state that they have been "denied rents and royalties under the terms of the EQT Lease" as a result of "EQT's fraudulent transaction and misrepresentation of the truthfulness in their royalty statements . . . ." *Id.* at ¶¶ 84-85, 87. Accordingly, Plaintiffs' claim for fraud fails to meet the requisite heightened standard for pleading and must be dismissed.

### C.  Plaintiffs' claim for civil conspiracy to commit fraud fails on its merits.

Plaintiffs state alternatively that, "should any of EQT Defendants be found to be individual and separate entities from EQT Corporation, then . . . EQT Production Company, EQT Energy, LLC, and any other named or unnamed co-conspirators which were involved or which discovery reveals have benefitted from the transactions [at issue] . . . entered into a conspiracy to commit fraud against Plaintiffs." *Id.* at ¶ 93.

Plaintiffs allege that "EQT Production Company and EQT Energy, LLC, came to an agreement in their gas purchase contract . . . as to the methodology of how the sale price of products produced from Plaintiffs' leasehold were to be determined . . . [and that] [t]his sale and the underlying agreed-to methodology was created to explicitly deprive Plaintiffs of their contractually and legally owed royalties, and to provide EQT with greater profit." *Id.* at ¶ 94. Further, Plaintiffs allege that "[t]his agreement arbitrarily establishes the undisclosed methodology by which EQT calculates the price that EQT Energy, LLC, would pay for the oil, gas, and other hydrocarbons which EQT Production Company was able to produce from Plaintiffs' leasehold." *Id.* at ¶ 95. Finally, Plaintiffs allege that "[t]he conspiracy was devised and utilized by EQT Production Company, its coconspirator EQT Energy, LLC, and any other named or unnamed co-conspirators who were involved or which discovery reveals have benefitted from the transactions in such a way so as to defraud and injure Plaintiffs by denying them their rightful 1/8 royalty payments from the

actual proceeds realized by EQT, and also to enrich EQT with proceeds gained from a true fair market deal that were not subject to those same contractually owed royalty payments. *Id.* at ¶ 98.

"West Virginia law makes it clear that a 'civil conspiracy is not a <u>per se</u>, stand alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).' " *Leggett*, 2016 WL 297714, at *8 (quoting *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W. Va. 2009) (internal citations omitted). "A civil conspiracy is more specifically defined as . . . a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Id.* (internal quotation omitted) (citation omitted). "Therefore, in order for civil conspiracy to be actionable it must be proved that the defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff[.]" *Id.* (internal quotation omitted) (citation omitted).

Plaintiffs' claim for civil conspiracy to commit fraud must be dismissed because there is no set of facts upon which Plaintiffs can establish their fraud claim and their civil conspiracy claim is not a stand alone cause of action.[5]

---

[5] Even if Plaintiffs cause of action for fraud were to survive dismissal, Plaintiffs' civil conspiracy claim does not specify what "wrongful act" or "lawful act in an unlawful manner to the injury" of the plaintiffs was committed by EQT Production, EQT Gathering, EQT Midstream, EQT Corporation, or Equitrans. Instead, Plaintiffs refer generally to "EQT" and state that "[t]he conspiracy was devised and utilized by EQT Production Company, its coconspirator EQT Energy, LLC, and any other named or unnamed co-conspirators who were involved or which discovery reveals have benefitted from the transactions." *Id.* at ¶ 98.

### D.  There is no cause of action for unconscionability and breach of duty of fair dealing as a matter of law.

Plaintiffs assert a claim for unconscionability and duty of fair dealing and allege that "EQT Defendants . . . violated their implied covenants to act in good faith toward, and fairly deal with, Plaintiffs in the performance of its duties to Plaintiffs under the said Cather Lease by refusing to pay the royalties due to Plaintiffs" and that "EQT withheld, and continue to withhold, monies owing to the Plaintiffs after Plaintiffs notified EQT that the amount being withheld from their royalty payments was improper, unreasonable, and unconscionable." Doc. No. 1 at ¶¶ 112, 114.

In West Virginia, there is "no independent claim for a breach of the common law duty of good faith" because a claim for breach of the covenant of good faith and fair dealing is really a claim for breach of contract. *Doyle v. Fleetwood Homes of Virginia*, 650 F. Supp. 2d 535, 541 (S.D.W. Va. 2009) (citing *Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007) ("it has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim."). *See also Stern v. Columbia Gas Transmission, LLC*, No. 5:15-CV-98, 2016 WL 7053702, at *4 (N.D.W Va. Dec. 5, 2016) (citing *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love,* 746 S.E.2d 568, 578 (W. Va. 2013). Claims for breach of duty of good faith and fair dealing "sound [] in breach of contract . . . [and] should properly be construed as breach of contract claims." *Id.* at 9-10.

Even if Plaintiffs' claim for breach of the duty of fair dealing were to survive this partial motion to dismiss, they would have to be construed as a breach of contract claim which has already been pled in this matter. *See*, *e.g.*, *Am. Heartland Port, Inc. v. Am. Port Holdings*, *Inc*., 2014 WL 3548631, at *7 (N.D.W. Va. July 17, 2014), *aff'd*, 624 F. App'x 110 (4th Cir. 2015). Plaintiffs' claim for breach of duty of fair dealing fail to state a claim upon which relief may be granted; accordingly, it must be dismissed.

### E. Plaintiffs' Claims for Violations of WVCCPA.

Counts X and XI of Plaintiffs' Complaint fail as a matter of law as the WVCCPA is not applicable to their claims because "the purpose of the WVCCPA is to protect consumers from unfair, unconscionable, fraudulent, and abusive practices of debt collectors." *Chevy Chase Bank v. McCamant*, 204 W. Va. 295, 302, 512 S.E.2d 217, 224 (W. Va. 1998).

#### 1. Plaintiffs' Claim Under Article 6 of the WVCCPA should be dismissed.

Plaintiffs allege that "Defendants" violated West Virginia Code § 46A-6-101, et seq., including West Virginia Code § 46A-6-104, "by engaging in unfair methods of competition and unfair or deceptive acts or practices . . . by providing unfair preferential treatments to EQT's affiliated/related entities in deals for products from Plaintiffs' leasehold, by deceiving the Plaintiffs in providing them a false royalty . . . , and by transmitting monthly statements to Plaintiffs through the United States mail stating that Plaintiffs owed money to EQT from their oil and gas royalty payouts. EQT then appropriated, without notice or explanation, Plaintiffs' money in satisfaction of the alleged debt by willfully and unfairly charging Plaintiffs for goods, services, and taxes incurred by EQT in the production, transportation, and sale of oil, natural gas and other products, and utilizing those monies taken from the Plaintiffs to pay back EQT entities and the selling entities' costs and/or recouping those amounts improperly in another manner." Doc No. 1 at ¶ 120.

This Court has previously examined whether lessors of natural gas qualify as "consumers" under this statute and has stated that "Article (6) of the WVCCPA defines a 'consumer' as 'a natural person to whom a sale or lease is made in a consumer transaction.'" W. Va. Code § 46A–6–102(2). Additionally, a 'consumer transaction' is defined as 'a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose.' [] Moreover, the WVCCPA's 'General Definitions,' W. Va. Code § 46A–1–102, define the term 'consumer' to mean 'a natural

person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease.'" *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09CV139, 2010 WL 3271965, at *7 (N.D.W. Va. Aug. 18, 2010).

In rejecting a plaintiff's argument that by taking deductions from plaintiffs' royalty payments defendants "engaged in deceptive practices under W. Va. Code § 46A–6–104, and that such conduct constitutes unlawful activity under the WVCCPA regardless of whether a party is a 'consumer[]'", this Court has held that "[a]lthough . . . W. Va. Code § 46A–6–104 does not include the words 'consumer' or 'consumer transaction,' . . . this omission does not lead to the conclusion that the scope of W. Va. Code § 46A–6–104 was intended to extend to non-consumer transactions." *Id.* Moreover, this Court has held that "plaintiffs . . . [who] are lessors of oil and natural gas . . . [are] not 'consumers' as defined in W. Va. Code §§ 46A6–102(2) or 46A–1–102, [and] the WVCCPA does not provide them with a legal remedy in this case." *Id.* at *8.

### 2. Plaintiffs' claim under Article 2 of the WVCCPA also fails.

Plaintiffs allege that "Defendants violated  . . . [Article 2 of the WVCCPA], including . . . § 46A-2-127 and § 46A-2-128, by engaging in unfair, unconscionable, fraudulent, deceptive, and misleading debt collection practices by falsely claiming in writing on royalty statements transmitted monthly to Plaintiffs through . . . mail that Plaintiffs owed money to EQT from their oil and gas royalty payouts" and that they are entitled to $1,000.00 for each and every violation as well as attorneys' fees and costs. Doc No. 1 at ¶ 117-8.

Plaintiffs' claims under Article 2 of the WVCCPA are outside the scope of the statute. West Virginia Code § 46A-2-127 states that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127. Similarly, "[n]o debt collector

may use unfair or unconscionable means to collect or attempt to collect any claim."[6] W. Va. Code § 46A-2-128.

Both W. Va. Code § 46A-2-127 and W. Va. Code § 46A-2-128 set forth several instances of conduct deemed to violate this section; however, none apply to this situation where EQT Production tendered royalty statements to Plaintiffs showing deductions from their royalty statements for certain costs.[7]

Article 2 of the WVCCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Plainly, Plaintiffs are not "consumers" as contemplated by the statute. W. Va. Code §46A-2-122 (a). [8] Even if Plaintiffs qualified as "consumers," which they do not, neither EQT Production nor any of the non-lessee entities qualifies as a "debt collector" as defined by the WVCCPA. Under Article 2, titled "Consumer Credit Protection," "[d]ebt collector" means any person or organization engaging directly or indirectly in debt collection. The term includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims." W. Va. Code § 46A−2 and §46A-2-122(d). "Debt collection" is defined as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. Va. Code §46A-2-122 (c). Additionally, "[c]laim" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a

---

[6] Moreover, as noted above, this Court has previously held that "whether a particular provision of the WVCCPA excludes the word 'consumer,' by its plain terms that statute protects only those persons qualifying as consumers and dealing in consumer transactions." *Cather,* 2010 WL 3271965, at *8.

[7] Plaintiffs do not specify which specific provision of W. Va. Code § 46A-2-127 and W. Va. Code § 46A-2-128 were allegedly violated by "Defendants." Because none of instances deemed to violate the aforementioned sections are applicable to this case, none are specifically set forth.

[8] "[T]he WVCCPA's 'General Definitions,' W. Va. Code § 46A–1–102, define the term 'consumer' to mean 'a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease.'" *Cather*, 2010 WL 3271965, at *7.

transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes . . . ." W. Va. Code §46A-2-122(b).

Moreover, Article 1 of the WVCCPA, entitled "Application," provides:

> [Chapter 46A] applies if a consumer, who is a resident of this state, is induced to enter into a consumer credit sale made pursuant to a revolving charge account, to enter into a revolving charge account, to enter into a consumer loan made pursuant to a revolving loan account, or to enter into a consumer lease, by personal or mail solicitation, and the goods, services or proceeds are delivered to the consumer in this state, and payment on such account is to be made from this state.

*Cather*, 2010 WL 3271965, at *7 (quoting W. Va. Code § 46A–1–104).

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." *Id.* (citation omitted). "It is . . . well established that every word in a statute should be given its typical meaning," and that "the intent of the legislature be acknowledged when interpreting a statute." *Id.* (citation omitted) Similar to *Cather*, where this Court held that "that statute protects only those persons qualifying as consumers and dealing in consumer transactions" and that the plaintiffs, lessors of oil and natural gas, were "not 'consumers' as defined in W. Va. Code §§ 46A6–102(2) or 46A–1–102" and were without a legal remedy under the WVCCPA, here the Plaintiffs are lessors of oil and natural gas and are not "consumers" as defined in W. Va. Code §46A-2-122(a) or 46A–1–102. Moreover, neither EQT Production Company nor any of the other non-lessee entities are "debt collectors" involved in "debt collection" of a "claim" as defined in Article 2 of the WVCCPA.

**F.   There is no set of facts upon which Plaintiffs can establish their breach of contract claim against the non-lessee entities.**

Plaintiffs allege that the "EQT Defendants" violated the Cather Lease, a contract, by failing to accurately pay them the royalty interest for production from the property at issue in accordance with the Cather Lease.[9] Doc. No. 1 at ¶ 101. However, there is no dispute that EQT Production is the successor in interest to the original lessee to the Cather Lease and that Plaintiffs are the successors in interest to the original lessor to the Cather Lease. See Doc. No. 1 at ¶¶ 16-7. "One not a party to a contract nor in privity with either of the parties thereto may not maintain a suit at law thereon, unless the promise or undertaking relied upon is made for his sole benefit." *Petty v. Warren*, 90 W. Va. 397, 110 S.E. 826 (W. Va. 1922). The non-lessee entities are not parties to the Cather Lease and no privity exists between the non-lessee entities and Plaintiffs; accordingly, Plaintiffs' breach of contract claim against them must be dismissed.

**G.   Plaintiffs cannot recover attorneys' fees and punitive damages.**

Plaintiffs seek attorney's fees and punitive damages in conjunction with the claims set forth in their Complaint; however, the practical realities of Plaintiffs' claims and the jurisprudence regarding those claims bar any such recovery.

**1.   Plaintiffs cannot recover attorneys' fees and punitive damages pursuant to their tort claims.**

As more thoroughly discussed above, Plaintiffs' claims for fraud, civil conspiracy to commit fraud, conversion, unconscionability, and breach of the duty of fair dealing are not viable as a matter of law. Current jurisprudence does not provide for a claim for unconscionability and breach of the duty of fair dealing independent of a breach of contract claim. Moreover, Plaintiffs cannot set forth any set of facts upon which Plaintiffs can establish their claims for conversion.

---

[9] "An oil and gas lease (or other mineral lease) is both a conveyance and a contract." Syl. Pt. 2, *Bryan v. Big Two Mile Gas Co*., 213 W. Va. 110, 113, 577 S.E.2d 258, 261 (W. Va. 2001) (quotation omitted) (citation omitted).

Plaintiffs are barred from recovering attorneys' fees and punitive damages pursuant to their fraud claim because Plaintiffs' fraud claim  is merely a breach of contract claim, for which attorneys' fees and punitive damages are not recoverable as discussed above, and is not pled with the necessary particularly. Moreover, to the extent that Plaintiffs' cause of action for civil conspiracy is contingent upon its fraud claim, Plaintiffs are barred from recovering attorneys' fees and punitive damages for the reasons more thoroughly discussed above.

Consequently, Plaintiffs' claims for attorneys' fees and punitive damages in conjunction with its fraud, civil conspiracy to commit fraud, conversion, unconscionability, and breach of the duty of fair dealing claims should be dismissed  as there are no facts upon which Plaintiffs can establish their right to recover on those claims.

### 2. Punitive damages and attorneys' fees are not recoverable based upon Plaintiffs' alleged breach of contract claim.

There are no facts upon which Plaintiffs can establish that their breach of contract claim entitles them to an award of attorneys' fees and punitive damages.

### a. Plaintiffs cannot recover attorneys' fees for their breach of contract claim and are limited to those damages outlined in the Cather Lease.

In Count VII of its Complaint, Plaintiffs allege that "EQT's failure to pay Plaintiffs the royalty interest owed . . . for the sale of the oil, gas, and other products produced from the Cather Lease, without deduction therefrom, is a breach of the contract for which EQT is liable." Doc. No. 1 at ¶ 102. Further, Plaintiffs allege that "EQT knowingly, willfully, maliciously and wrongfully . . . withheld payment . . . in royalties due to Plaintiffs" and request "legal fees and costs incurred in the prosecution of this civil action." *Id.* at ¶ 101 and (j) of WHEREFORE paragraph. However, punitive damages and attorneys' fees are generally not available for breach of contract claims, and they are not recoverable here.

Generally, "absent a contractual or statutory provision to the contrary, a prevailing party cannot recover attorneys' fees and expenses from a losing party." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999) (citing *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 403 S.E.2d 334, 335 (1991)).

Here, neither the Cather Lease nor any applicable statutory provision allows Plaintiffs to recover attorneys' fees for its breach of contract claim, and EQT Production and the non-lessee entities' alleged activities do not come within the meaning of the exceptional rule for awarding attorneys' fees in equity. Instead, Plaintiffs' potential recovery is limited to those remedies provided in the contract and under common law.

### b. Plaintiffs' cannot recover punitive damages for its breach of contract claim.

Punitive damages cannot be recovered for a breach of contract.  *See Berry v. Nationwide Mut. Fire Ins. Co.*, 381 S.E.2d 367, 374 (W.Va. 1989) ("Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract."); *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W.Va. 1986) ("Generally, punitive damages are unavailable in an action for breach of contract unless the conduct of the defendant constitutes an independent, intentional tort."). Plaintiffs allege that "EQT knowingly, willfully, maliciously and wrongfully . . . withheld payment . . . in royalties due to Plaintiffs" and seek punitive damages Doc. No. 1 at ¶¶ 101, 127. Plaintiffs have not sufficiently pled an independent, intentional, viable tort not subject to dismissal which would potentially allow them to recover punitive damages. Consequently, Plaintiffs' claim for punitive damages for its breach of contract claim must be dismissed.

## V. CONCLUSION

Based on the foregoing, EQT Production and the non-lessee entities move that the following claims be dismissed as a matter of law because they fail to state a claim upon which relief may be granted: (1) alter ego; (2) fraud; (3) civil conspiracy to commit fraud; (4) conversion; (5) unconscionability and breach of the duty of fair dealing; (6) Article 6 of the WVCCPA; (7) Article 2 of the WVCCPA; (8) breach of contract as to the non-lessee entities; and (9) punitive damages and  attorneys' fees. EQT Production and the non-lessee entities seek such other and further relief as the Court may deem appropriate.

Respectfully submitted,

**EQT PRODUCTION COMPANY,**
**EQT GATHERING, LLC (d/b/a**
**"EQT MIDSTREAM"), EQT ENERGY, LLC,**
**EQT MIDSTREAM SERVICES, LLC,**
**EQT CORPORATION, and**
**EQUITRANS, L.P.,**

By Counsel

/s/ Katrina N. Bowers
Timothy M. Miller (WVSB #2564)
Katrina N. Bowers (WVSB #12337)
Babst Calland, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
(681) 205-8888 (main)
(681) 205-8814 (fax)
tmiller@babstcalland.com
kbowers@babstcalland.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
(CLARKSBURG DIVISION)

WILLIAM L. CATHER, and BRENDA L. CATHER,
husband and wife, CHARLES H. CATHER, and
LINDA F. CATHER, husband and wife,
EVERET P. BICE, JR. and ELIZABETH BICE,
husband and wife, and ROBERT JUNIOR
HEMPHILL, TRUSTEE OF TRUST A CREATED
UNDER THE HEMPHILL FAMILY TRUST
DATED OCTOBER 17, 1995, AS AMENDED,

      Plaintiffs,

v.                                   Civil Action No. 1:17-cv-208
                                      Honorable Irene M. Keeley

EQT PRODUCTION COMPANY,
EQT GATHERING, LLC (d/b/a
"EQT MIDSTREAM"), EQT ENERGY, LLC,
EQT MIDSTREAM SERVICES, LLC,
EQT CORPORATION, AND
EQUITRANS, L.P.,

      Defendants.

## CERTIFICATE OF SERVICE

The undersigned, as counsel for Defendants, hereby certifies I served a true and accurate copy of the attached Memorandum in Support of Defendants' Motion for Partial Dismissal for filing and uploading to the CM/ECF system which will send electronic notifications of such filing to the following counsel of record this 1st day of February, 2018:

John F. McCuskey, Esquire
Brian Warner, Esquire
Shuman, McCuskey & Slicer, PLLC
1445 Stewartstown Road, Suite 200
Morgantown, WV 26505
(304) 291-2702
(304) 291-2840 fax
*Counsel for Plaintiffs*

{B3562107.1}                        23

/s/ Katrina N. Bowers
Timothy M. Miller (WV Bar No. 2564)