IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

WILLIAM L. CATHER,
BRENDA L. CATHER,
CHARLES H. CATHER,
LINDA F. CATHER,
EVERET P. BICE, JR.
ELIZABETH BICE,
ROBERT JUNIOR HEMPHILL,
Trustee of Trust A Created Under
the Hemphill Family Trust Dated
October 17, 1995, as Amended,

        Plaintiffs,

v.                            Civil Action No. 1:17-CV-208
                                        (Judge Kleeh)

EQT PRODUCTION COMPANY,
EQT GATHERING, LLC,
EQT ENERGY, LLC,
EQT MIDSTREAM SERVICES, LLC,
EQT CORPORATION, and
EQUITRANS, L.P.,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

Pending before the Court is Plaintiffs' Motion for Summary Judgment as to Deductions [ECF No. 74]. The motion has been fully briefed, the Court has entertained argument from counsel, and the matter is now ripe for decision. For the reasons discussed, the Court grants Plaintiffs' motion.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

## I.    Factual Background

### A. The Lease

On February 20, 1963, D.L. Cather and Lila S. Cather, W.L. Cather and Maxine Cather, and Mary Hemphill and Robert J. Hemphill signed a lease agreement ("Cather Lease") with Equitable Gas Company. ECF No. 1 at ¶ 6. That lease related to oil and gas rights attached to nearly 504 acres in Taylor County, West Virginia. Id. Plaintiffs are the current owners of that tract and lessors under that lease agreement. Id. ¶¶ 16, 19. Equitable Gas Company's interest in the Cather Lease currently resides with Defendant EQT Production Company. Id. ¶ 17.

With respect to royalty payments, the Cather Lease provides:

> Lessee shall pay to the Lessor for each and every well drilled upon such land, which produces Natural Gas and/or Casinghead Gas in a quantity sufficient for the Lessee to convey to market, a money royalty computed at the rate of one-eight (1/8) of the wholesale market value which is based on the average current price paid by the Lessee to independent operators in the general area . . . payment to be on or before the 25th day of the month following that in which the gas has been delivered into the marketing pipeline . . . .

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

ECF No. 74-1 at 1. The lease is silent on whether the Lessee may deduct from the royalty payments for the costs of severance, costs of production, or costs of any kind, including severance taxes. The Cather Lease does permit the Lessee, at its option, to prepay any taxes "on or against the land or gas and/or oil in place under the . . . lands" and recoup those payments against any royalties due under the agreement. Id.

### B. EQT Application of Lease Language

EQT prefers the word "allocation" as opposed to "deduction." In its discovery responses, EQT Production explained its basis for taking deductions as follows:

> EQT Production pays royalties based on the specific language set forth in royalty owners' leases and does not take "Deductions" from Plaintiffs' royalties. The amount of "[d]educti[ons]" is the amount allocated to Plaintiffs for their share of the gathering and compression charges used to arrive at a sales price under the Gas Purchase Agreements entered into by and between EQT Energy and EQT Production after adding in the value of depreciation, return on investment, and taxes. Lessors are responsible for their proportionate share of severance taxes. Notwithstanding the preceding objections, which are expressly reserved, EQT Production directs Plaintiffs to the Owner Revenue Inquiry attached hereto as EQT Production00003-00011 which reflects otherwise responsive information to this request.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

ECF No. 74-4 at ¶¶ 10–11; <u>see also</u> ECF No. 84 at 3–4.  EQT has been consistent in this and other litigation as to how silence in leases permits it to "allocate" expenses and taxes to lessors.  Jimmi Sue Smith, EQT Corporation's Chief Accounting Officer, stated in her affidavit submitted in <u>The Kay Company, LLC, et al. v. EQT Production Co., et al.</u>, 1:13-cv-151, and attached to Plaintiffs' Motion here that EQT Production pays severance tax to the State of West Virginia including "its own share *and* the lessor's share . . . ."  ECF No. 74-5 at ¶ 2.  Ms. Smith went on to state that "[i]f severance tax deductions were not prohibited by the lessor's lease, each lessor's proportionate share . . . of severance taxes actually paid to the West Virginia State Tax Department was taken into account in calculating royalty."  <u>Id.</u> ¶ 4.

Notwithstanding the preference to refer to its business practice as one of allocation, John Bergonzi, then EQT Corporation's Vice President of Finance and Controller, stated in his <u>Kay Company</u> affidavit, "On leases where royalty was to be paid 'at the well' and allowed the deduction of downstream costs,[1] EQT Production deducted the royalty owners' share of

---

[1] As noted, the Cather Lease contains no provision "allow[ing] the deduction of downstream costs."

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

downstream costs from the sales price received, as shown on its royalty remittance statements."[2]  ECF No. 74-6 at ¶ 12.  Mr. Bergonzi's deposition testimony confirmed the practice of deducting for expenses from royalty payments to lessors.  In determining "market value at the wellhead," he noted that "EQT determines market value at the wellhead . . . by finding the first liquid trading point or sales point and then deducting the costs to get that gas from that liquid trading point or from the wellhead to that liquid trading point."  ECF No. 74-7 at 2.

Plaintiffs also submitted portions of <u>Kay Company</u> transcript from the deposition of Michael Barbour, then Supervisor of Division Order for EQT Corporation.  Mr. Barbour testified about the processing of leases, paying particular attention to deductions for post-production expenses and taxes. He described as a "general business practice[] or polic[y]" the "tak[ing]" of production taxes from a one-eighth royalty where

---

[2] The Cather Lease makes no reference to "at the well," "at the wellhead," or anything similar.  Instead, royalty payments are to be calculated "based on the average current price paid by the Lessee to independent operators in the general area . . . ." ECF No. 74-1 at 1.  The distinction in lease language does not appear to be of significance with respect to the application and relevance of this past testimony as Defendant EQT Production, according to its own Remittance Statements, has calculated the net royalty payment issued to Plaintiffs similarly regardless of different lease provisions.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

the lease is silent on the allocation of severance taxes. ECF
No. 74-8 at 6. Mr. Barbour also testified that EQT would take
post-production expenses if the royalty clause of a particular
lease stated that one-eighth of the wholesale market value would
be paid to the royalty owner with no specific mention of
deductions. Id. at 7.

### C. Performance Under the Cather Lease

EQT commenced production pursuant to its rights under the
Cather Lease in or around March 2012, constructing six (6) wells
tapping into the Marcellus Shale formation. ECF No. 1 at ¶ 20.
Since then, EQT Production has reported to each Plaintiff each
month information related to the production performance of each
well via a Remittance Statement. See ECF No. 74-3. Those
Statements provide certain information including production
date, production type, interest type, net price, decimal
interest, sales and owner volume, sales and owner revenue,
taxes, gross and owner deductions, and well net and owner net
revenue. Id. Based on the Statements issued from April 2012
through and including January 2019 (which reports February 2012
to November 2018 data), the "owner deducts" and "owner taxes"
deductions totaled $751,109.65. Id.; see also ECF No. 75 at 5.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

## II.  <u>Procedural History</u>

On December 7, 2017, Plaintiffs Charles H. Cather, Brenda L. Cather, William L. Cather, Elizabeth Bice, Everet P. Bice, Jr., Linda F. Cather, and Robert Junior Hemphill filed their Complaint against EQT Corporation, EQT Energy, LLC, EQT Gathering, LLC, EQT Midstream Services, LLC, EQT Production Company, and Equitrans, L.P. (sometimes hereinafter "Defendants"). ECF No. 1. That Complaint contained a number of claims:  Alter Ego, Fraud, Civil Conspiracy to Commit Fraud, Breach of Contract, Conversion, Unconscionability and Breach of Duty of Fair Dealing, Violation of the West Virginia Consumer Credit and Protection Act Section 2, Violation of the West Virginia Consumer Credit and Protection Act Section 6, and Interest Due to Plaintiffs on Improperly Withheld Royalty Payments and Punitive Damages.  <u>Id.</u>  Defendants filed their Answer on February 1, 2018.  ECF No. 14.  That same day, Defendants filed their Motion for Partial Dismissal. ECF No. 15. After briefing and entertaining argument, Judge Keeley granted-in-part and denied-in-part that motion, dismissing the claims for Fraud (Count V), Civil Conspiracy to Commit Fraud (Count VI), Conversion (Count VIII), Unconscionability and Breach of Duty of Fair Dealing (Count IX), Violations of the West Virginia Consumer Credit and Protection Act (Counts X and XI), and

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

Punitive Damages (Count XIII).[3]  ECF No. 27.  That ruling left
Counts IV and VII asserting Alter Ego and Breach of Contract
theories of recovery.

Plaintiffs filed their Rule 60 Motion for Relief from Final
Order or, Alternatively, Motion for Leave to Amend Complaint on
November 15, 2018.  ECF No. 57.  This matter was transferred to
United States District Judge Thomas S. Kleeh on December 1,
2018.  Plaintiffs' Rule 60 and/or Rule 15 motion was denied on
May 17, 2019.  ECF No. 95.  Plaintiffs filed their Motion for
Summary Judgment on February 15, 2019.  ECF No. 74.  The parties
have fully briefed that motion and, after a July 15, 2019,
hearing, the matter is ready for decision.

### III. <u>Analysis</u>

**A. West Virginia Law**

A review of the long-standing law on the issues raised by
Plaintiffs' pending motion may be of benefit.  The Supreme Court
of Appeals of West Virginia has had occasion to examine this
area several times in recent years.  Yet, the concepts seem to
remain elusive.

---

[3] Judge Keeley also dismissed Plaintiffs' request for attorney's
fees.  The Court's summary order can be found at ECF No. 27
while the transcript setting forth the Court's analysis is
docketed at ECF No. 63.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]

Since 2001, over 18 years ago now, the Supreme Court of Appeals has clearly articulated that leases silent on the issue of "post-production" expenses do not permit — nor does the law permit — reductions of royalty payments for post-production expenses. "If an oil and gas lease provides for a royalty based on proceeds received by the lessee, **unless the lease provides otherwise**, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale." Syl. Pt. 4, Wellman v. Energy Res., Inc., 557 S.E.2d 254 (W. Va. 2001) (emphasis added).

In rejecting the lessee's claim that it was entitled to deduct certain expenses before calculating the lessor's royalty, the Supreme Court of Appeals noted that the "landowner's royalty," the traditional one-eighth share of the sale price received, was "not chargeable with any of the costs of discovery and production." Id. at 263-64. The court further rejected the re-naming of such deductions as "post-production expenses" based on the lessee's duty to market the oil or gas produced. Id. at 264.

The Supreme Court of Appeals reiterated its holdings from Wellman in Estate of Tawney v. Columbia Natural Resources, L.L.C., 633 S.E.2d 22 (W. Va. 2006). In fact, the court further heightened the duties on lessees if they sought to recoup post-

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

production expenses from lessors.  Any "allocation" of marketing or production costs between the lessor and lessee must be "express" in the lease and "identify with particularity" the specific deductions to be taken from the one-eighth royalty. Id. at Syl. Pt. 10.

This Court and the Southern District of West Virginia have also had opportunity to apply the guidance of the Supreme Court of Appeals.  Judge Goodwin undertook an extensive review of the history of West Virginia jurisprudence on these issues in W.W. McDonald Land Co., et al. v. EQT Production Co., et al., 983 F. Supp. 2d 790 (S.D.W. Va. 2013).[4]  After synthesizing Wellman and Tawney, the Southern District concluded that "lessees have a duty to bear all costs incurred until the gas reaches market, not to a point of sale. . . . [L]essees have an implied duty to bear all post-production costs incurred until the gas reaches the market . . . ."  Id. at 802.  Judge Goodwin, in partially granting summary judgment to the lessors, found, in the absence

---

[4] Judge Goodwin undertook an exhaustive and scholarly review of the relevant cases.  In the interest of brevity, this Court will not repeat his efforts but refers any interested reader to his thorough discussion.  See W.W. McDonald, 983 F. Supp. 2d at 796–804.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

of "lease language to the contrary, <u>Tawney</u> requires lessees to pay royalties free of [post-production expenses]." <u>Id.</u> at 804.[5]

This Court, in <u>Richards v. EQT Production Co.</u>, No. 1:17CV50, 2018 WL 3321441 (N.D.W. Va. July 5, 2018), denied the plaintiffs' motion for partial summary judgment because EQT Production was the lone defendant removing from the controversy its relationship with any other entities, alter ego or otherwise, and because of factual disputes requiring jury resolution. <u>Id.</u> at *4. Thereafter, during trial, Judge Keeley granted the plaintiffs' motion for directed verdict on the issue of severance tax deductions from one-eighth royalty payments where the lease did not specifically allow such deductions. ECF No. 74-9 at 23-24. The Court's ruling was based on the plain language of the statute and its application to a lease devoid of language addressing severance taxes. <u>Id.</u>

**B. Cather Lease Deductions**

Considering all of these cases, the rule of law with respect to deductions from royalty payments for either post-

---

[5] He likewise rejected EQT's efforts, as the Court saw them, to "simply reorganiz[e] their businesses and mak[e] intra-company wellhead sales" to circumvent <u>Tawney</u>'s requirements. <u>Id.</u> at 804.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

production expenses or severance taxes could not be more clear.[6]
Such deductions are impermissible absent express language
permitting them. There is no dispute that the Cather Lease
lacks the requisite language authorizing deductions. Yet, every
single Remittance Statement submitted to the Court contains
deductions for **BOTH** severance taxes and post-production
expenses. See ECF No. 74-3. There is no dispute the deductions
were made — despite the absence of Tawney-compliant provisions.

Absent from its briefing but argued at the July 15, 2019,
hearing, Defendants now contend that Wellman and Tawney are
inapplicable to this case, rendering Plaintiffs' reliance on
them irrelevant. Initially, Defendants argue that the implied
duty to market discussed in both Wellman and Tawney only applies
to ambiguous lease language. Further, EQT believes the
prohibition against deductions — the clear rule established in
Wellman and expounded upon in Tawney — is not applicable without
a finding of ambiguity. This argument rings quite hollow.
Wellman's holding could not be more clear or plain: "If an oil

---

[6] As Judge Keeley noted, and EQT repeats, the Supreme Court of
Appeals has offered no guidance on interpretation of the
"Severance and Business Privilege Tax Act of 1993" ("the Act").
As discussed later, this Court concurs with Judge Keeley's
analysis and conclusion that, under the plain language of the
statute, lessors cannot be "charged" a portion of severance
taxes which are assessed on the extractor.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

and gas lease provides for a royalty based on proceeds received by the lessee, unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale." Syl. Pt. 4, <u>Wellman</u>, 557 S.E.2d 254.[7] Despite Defendants' urging to the contrary, the words "ambiguous" or "ambiguity" do not even make an appearance in that opinion. The claim that concerns of lease ambiguity were the genesis of this rule of law are, frankly, without any basis whatsoever.

Defendants' claim that ambiguity must exist for the prohibition against deductions to apply finds no support in <u>Tawney</u> either. The <u>Tawney</u> court reiterated the holdings from <u>Wellman</u> and outlined for lessees a legally-sound path for deducting post-production expenses from royalty payments. The lease must expressly provide for some allocation or sharing of costs between the wellhead and point of sale. Syl. Pt. 10,

---

[7] Importantly, this point of law was initially declared in a syllabus point. As the Supreme Court of Appeals has recognized, the West Virginia Constitution requires as much. Syl. Pt. 13, <u>State ex rel. Med. Assurance of W. Va., Inc. v. Recht</u>, 583 S.E.2d 80 (W. Va. 2003) ("[N]ew points of law . . . will be articulated through syllabus points as required by our state constitution."). This Court notes the use of a syllabus point — seven years before production under the Cather Lease started — only to highlight the indisputable language used in a separate, constitutional pronouncement.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

Tawney, 633 S.E.2d 22.   That express provision must identify
"with particularity the specific deductions" to be withheld and
the specific method of calculating the amount of post-production
expenses to be deducted from the lessor's royalty.   Id.   This
clear point of law likewise does not hinge on any finding of
ambiguity in the underlying lease.   Nor does Tawney limit its
own application to any particular lease language.   In short,
years before production under the Cather Lease began, the
Supreme Court of Appeals provided a roadmap to Defendants and
other lessees on how to properly, legally deduct post-production
expenses from royalty payments in the state of West Virginia.
The failure to follow that map cannot be excused by an argument
without legal basis.

Defendants also urge this Court to take up the purported
invitation of the Supreme Court of Appeals in Leggett, et al. v.
EQT Production Co., et al., 800 S.E.2d 850 (W. Va. 2017), to
cast aside Wellman, Tawney, and the principles governing leases
like the Cather Lease for nearly two decades based on the dicta
questioning those "under-developed or inadequately reasoned"
decisions.   Id. at 863.   EQT's invitation is misplaced.   The
Leggett court **expressly** left "for another day the continued
vitality and scope of Wellman and Tawney."   Id.   In other words,
Wellman and Tawney continue to have the same vitality and scope

14

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

they have had since being decided. This Court is also mindful
that it sits in diversity in this case. "[F]ederal courts
sitting in diversity rule upon state law as it exists and do not
surmise or suggest its expansion." St. Paul Fire & Marine Ins.
Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995).[8]

Wellman and Tawney remain the law of the state of West
Virginia. The principles of those cases apply here. There is
no genuine issue of material fact that deductions made unlawful
by Wellman and Tawney were made from royalty payments provided
for under the terms of the Cather Lease. Summary judgment is
therefore appropriate on the question of deductions.
Plaintiffs' motion is **GRANTED.**

**C. Severance Tax Deductions**

Plaintiffs further seek summary judgment with respect to
severance tax deductions from royalty payments under the Cather
Lease based on the text of the Act as well as this Court's
decision in Richards. Defendants challenge that motion based on

---

[8] This principle may be particularly applicable here. The
composition of the Supreme Court of Appeals has changed multiple
times since the Leggett court questioned, without disturbing,
Wellman and Tawney. This Court will not gaze into its crystal
ball to speculate as to whether a future court will take the
next step to abrogate the "under-developed or inadequately
reasoned" decisions. Thankfully, the principle of stare decisis
does not require such an effort.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

the same arguments made during the _Richards_ trial and outlined
in their post-trial motions in that case.   There is no dispute
that deductions were made for severance taxes.   As Defendants
stated in their written discovery responses, "[l]essors are
responsible for their proportionate share of severance taxes."
ECF No. 74-4 at ¶¶ 10-11; _see also_ ECF No. 74-3.

Plaintiffs' claim centers on the "Severance and Business
Privilege Tax Act of 1993," W. Va. Code § 11-13A-1, et seq.   The
Act provides, "For the privilege of engaging or continuing
within this state in the business of severing natural gas or oil
for sale, profit or commercial use, there is hereby levied and
shall be collected from every person exercising such privilege
an annual privilege tax . . . ." W. Va. Code § 11-13A-3a(a).
This tax applies "to all persons severing gas or oil in this
state . . . ." _Id._ § 11-13A-3a(c).

The statutory definitions amplify Plaintiffs' position.
Under the statute, "severing" means "the physical removal of the
natural resources from the earth or waters of this state by any
means . . . ." _Id._ § 11-13A-2(c)(11).   Taxpayer is defined as:

> any individual, partnership, joint venture,
> association, corporation, receiver, trustee,
> guardian, executor, administrator, fiduciary
> or representative of any kind engaged in the
> business of severing or processing (or both
> severing and processing) natural resources
> in this state for sale or use. In instances

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

> where contracts (either oral or written) are
> entered into whereby persons, organizations
> or businesses are engaged in the business of
> severing or processing (or both severing and
> processing) a natural resource but do not
> obtain title to or do not have an economic
> interest therein, the party who owns the
> natural resource immediately after its
> severance or has an economic interest
> therein is the taxpayer.

Id. § 11-13A-2(c)(13).

As noted, this Court has previously had opportunity to address this issue — without the benefit of guidance from the Supreme Court of Appeals. In Richards, Judge Keeley directed verdict in favor of the lessors, finding the severance tax statute unambiguous and only applicable to persons or entities "in the business of severing or processing" the gas and not lessors unless they are "in the business of severing or processing the gas." The Court found EQT Production Company's position "erroneous as a matter of law" in entering judgment on behalf of the lessors.

This Court agrees with Judge Keeley's analysis. The statute clearly limits its own applicability to those engaged in the business of severing, in this instance, natural gas from West Virginia lands. The applicability of the tax is limited to those exercising the privilege of extracting natural gas from property. As Plaintiffs point out, the definitions under the

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

Act emphasize the unambiguous language: a "taxpayer" must be
"engaged in the business of severing or processing (or both
severing and processing) natural resources in this state for
sale or use . . . ." W. Va. Code § 11-13A-2(c)(13). There is
no dispute that Plaintiffs are not in such a business, while
Defendants, at least Defendant EQT Production, are — which is
the reason for the Cather Lease. Defendants, under the terms of
that lease, retain the exclusive rights and ability to sever the
natural gas at issue.

Defendants' contention that Plaintiffs qualify as a
"taxpayer" under the Act is unavailing. Defendant EQT
Production immediately sells the extracted gas to Defendant EQT
Energy — not Plaintiffs or any unrelated party for that matter.
While the "taxpayer" definition does contemplate an economic
interest, the Act's definition of that concept expressly
precludes Plaintiffs from the taxpayer classification.
"Economic interest" does not include "a person who only receives
an arm's length royalty . . . ." W. Va. Code § 11-13A-2(c)(4).

This Court likewise concurs with Judge Keeley's conclusion
that deductions from royalty payments not only must be
reasonable and actually incurred but also must be "legal." The
Act limits its application to taxpayers — as defined under the
statute. Even if the parties could contract to the contrary,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

which they cannot, the Cather Lease contains no language
permitting deductions for severance taxes imposed on the lessee.
Simply put, the deductions made for severance taxes not only run
afoul of <u>Wellman</u> and <u>Tawney</u> but also flout the clear,
unambiguous statute governing such taxes. Therefore,
Plaintiffs' motion with respect to severance tax deductions is
**GRANTED** on this basis as well.

### D. Deduction Damages

Although, as noted herein as well as in their briefing,
Defendants contest the notion that the deductions taken from
Plaintiffs' royalty payments under the Cather Lease are
impermissible or unlawful, there is no dispute as to the amount
of deductions withheld or the fact the deductions were taken.
The Remittance Statements [ECF No. 74-3] state as much, and
counsel conceded the obvious point during the July 15, 2019,
hearing. Because this Court has found that these deductions run
contrary to well-established West Virginia law and Plaintiffs
are entitled to judgment as a matter of law on the issue,
Plaintiffs are likewise entitled to judgment in the amount of
those deductions.[9]

---

[9] Defendants argue that the true issue in this matter is whether
Plaintiffs received "market value" under the Cather Lease. They

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

Defendants' Remittance Statements from April 2012 through
and including January 2019 provide basic information about the
gross and net royalty calculations and payments.  Defendant EQT
Production prepared and issued the Remittance Statements and,
therefore, do not contest their accuracy.  The Remittance
Statements produced to the Court at summary judgment stage are
attached to Plaintiffs' motion as Exhibit 3.  ECF No. 74-3.
There is no dispute that the "Owner Deducts and Owner Taxes"
category is a list of the deductions at issue, representing
withholdings for expenses and severance taxes.  The collective
total of deductions taken at the time of Plaintiffs' motion is
$751,109.65.  ECF No. 75 at 5; ECF No. 74-3.

For the reasons articulated herein, because the Court finds
the deductions improper and because there is no genuine issue of
material fact with respect to the amount of such deductions

---

are correct in that the lease requires such a royalty payment.
However, as discussed at length, West Virginia law prohibits the
deductions Defendants took from the royalty payments in
calculating what Defendants believe to be "market value."  Thus,
considering Defendants' own Remittance Statements, "market
value" must be at least the net royalties paid plus the improper
deductions.

Plaintiffs also contend that the "Net Price" listed in the
Remittance Statements [ECF No. 74-3] and used to calculate the
royalty due under the lease was lower than the market price.
That issue was not made subject of this motion, and the Court
leaves that matter for another day.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

withheld to date, Plaintiffs are entitled to summary judgment as
to those deductions in the amount of $751,109.65.[10]

### E. Prejudgment Interest

Plaintiffs also contend that they are entitled to
prejudgment interest on those improper deductions. Defendants
argue that consideration of interest is premature.[11] With no
genuine issue of material fact existing on the issues presented
in Plaintiffs' motion and Plaintiffs being entitled to judgment
as a matter of law, the Court does not believe consideration of
prejudgment interest on the amount set by this order to be
premature. However, given the sometimes-murky waters of the law
governing prejudgment interest in breach of contract cases, some
discussion of the issue is warranted. See Bd. of Educ. of
McDowell Cty. v. Zando, Martin & Milstead, Inc., 390 S.E.2d 796,

---

[10] Plaintiffs' motion only seeks judgment as to the propriety and
amount of deductions. As discussed at the July 15, 2019,
hearing, Plaintiffs have remaining claims concerning the price
used to calculate royalty payments. Those claims are not
subject of the pending motion and are not addressed herein.

[11] Defendants also argue that Plaintiffs motion on this ground is
misplaced because (1) the true issue is whether Plaintiffs were
paid market value under the Cather Lease and (2) Plaintiffs have
failed to offer a comparison of amounts received to amounts that
should have been paid under the lease. The Court has already
dispensed with this argument, and it does not warrant further
consideration on the issue of prejudgment interest.

809 (W. Va. 1990) ("Admittedly, there is some confusion in our cases with regard to prejudgment interest in contract cases.").

The West Virginia Code provides:

> The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict.

W. Va. Code § 56-6-27. "In this jurisdiction one who withholds money from the rightful owner on the date when it should be paid is liable for interest." Morton v. Godfrey L. Cabot, Inc., 63 S.E.2d 861, 864 (W. Va. 1949) (citation omitted). "Interest accrues on a debt from the time it is due, although liability therefor was in dispute." Id. (citation omitted). Simply put, "[a] past due debt, certain in amount, bears interest from the due date until paid." Id. at Syl. Pt. 1.

Defendants urge a distinction between this matter and Morton. Any distinction is one without meaning. Defendants are correct that Morton involved stipulated facts, waiver of a jury trial, and submission of the issue to the court in lieu of a jury. Here, while no party has waived a jury trial, this Court has found such a proceeding unnecessary on the issues raised in Plaintiffs' motion as no material facts are in dispute and

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AS TO DEDUCTIONS [ECF NO. 74]**

Plaintiffs are entitled to judgment as a matter of law. Defendants offer no other reason why <u>Morton</u> and its application of W. Va. Code § 56-6-27 should not prevail here.

Thus, pursuant to W. Va. Code § 56-6-27, this Court finds that Plaintiffs are entitled to prejudgment interest on the amounts awarded. Therefore, Plaintiffs' motion with respect to prejudgment interest is **GRANTED**. The parties did not address the specific interest calculation or potential amount of interest which may be due on the deductions in their summary judgment briefing. Plaintiffs are hereby ordered to submit additional briefing and their prejudgment interest calculation within 21 days of entry of this order. Defendants shall have 14 days after Plaintiffs' submission to respond with any objections or alternative calculations.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Motion [ECF No. 74] is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: August 13, 2019

_Tom S Kleeh_
_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE